# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47939-7-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| BENJAMIN JOSHUA CHESTER, | |
| Appellant. | |

MAXA, J. – Benjamin Chester appeals his conviction of unlawful possession of a controlled substance (psilocybin), which was based on his possession of hallucinogenic mushrooms. A park ranger discovered the mushrooms after detaining Chester for suspicion of unlawfully harvesting mushrooms in a state park. He argues that the trial court erred in denying his motion to suppress the hallucinogenic mushrooms.

We hold that the park ranger had a reasonable suspicion of criminal activity justifying his detention of Chester and that the ranger could lawfully search a nearby bag of freshly harvested hallucinogenic mushrooms because Chester abandoned the bag. Accordingly, we affirm the trial court's order denying Chester's motion to suppress and we affirm Chester's conviction.

## FACTS

On November 22, 2014, a park aide in Cape Disappointment State Park notified Thomas Benenati, a park ranger, that a gate on a side road that was closed to traffic was open. He also reported that he saw two men who ran away after seeing him. Benenati drove his patrol vehicle to the area, which was densely wooded. He observed a man, later identified as Chester, "on his

hands and knees intently going through the leaf debris in a manner consistent with a person who was harvesting mushrooms." Clerk's Papers (CP) at 46. The area was closed to mushroom harvesting.

When Chester saw Benenati's vehicle he stood up and began walking away. Benenati ordered Chester to stop, and Benenati handcuffed and detained him for questioning. Benenati then went to the area where Chester had been on his hands and knees and discovered a bag containing freshly picked hallucinogenic mushrooms.

The State charged Chester with unlawful possession of a controlled substance. Chester moved to suppress the seized evidence. Following a CrR 3.6 hearing, the trial court denied the motion. The trial court concluded that Benenati had probable cause to believe that Chester was illegally harvesting mushrooms, that Chester's detention was lawful, and that Benenati's search of the bag of hallucinogenic mushrooms was permissible as either a search incident to arrest or a search of abandoned property. The trial court further concluded that Chester had no reasonable expectation of privacy in the bag of mushrooms.

A jury found Chester guilty. He appeals.

ANALYSIS

A.    STANDARD OF REVIEW

When reviewing a trial court's denial of a CrR 3.6 motion to suppress evidence, we determine whether substantial evidence supports the findings of fact and whether those findings of fact support the conclusions of law. *State v. Russell*, 180 Wn.2d 860, 866, 330 P.3d 151 (2014). Substantial evidence is evidence that is sufficient to persuade a fair-minded person of the truth of the finding. *Id.* at 866-67.

Here, Chester assigns error to only one portion of one finding of fact. We treat unchallenged findings of fact from a suppression hearing as verities on appeal. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). Chester also assigns error to three conclusions of law. We review conclusions of law de novo. *Russell*, 180 Wn.2d at 867.

B.      JUSTIFICATION FOR INVESTIGATIVE STOP

Chester argues that his initial detention was not a permissible *Terry*[1] stop because Benenati did not have a reasonable suspicion that he had committed a crime. We disagree.

1.    Legal Principles

Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution, an officer generally cannot seize a person without a warrant. *State v. Fuentes*, 183 Wn.2d 149, 157-58, 352 P.3d 152 (2015). The State bears the burden of showing that the seizure falls within an exception to the warrant requirement. *State v. Z.U.E.*, 183 Wn.2d 610, 617, 352 P.3d 796 (2015). One established exception is a brief investigatory detention of a person, known as a *Terry* stop. *Id.*

For a *Terry* stop to be permissible, an officer must have had a reasonable suspicion based on specific and articulable facts that the detained person was or was about to be involved in a crime. *Id.* The available facts must connect the detained person to the particular crime that the officer seeks to investigate. *Id.* at 618.

We determine the propriety of an investigative stop – the reasonableness of the officer's suspicion – based on the "totality of the circumstances." *Fuentes*, 183 Wn.2d at 158. "The totality of circumstances includes the officer's training and experience, the location of the stop,

_____

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

the conduct of the person detained, the purpose of the stop, and the amount of physical intrusion on the suspect's liberty." *Id.* The focus is on what the officer knew at the inception of the stop. *Id.*

A mere hunch unsupported by articulable facts that the person has committed a crime is not enough to justify a stop. *State v. Doughty*, 170 Wn.2d 57, 63, 239 P.3d 573 (2010). But an officer can rely on his or her experience to identify seemingly innocent facts as suspicious. *State v. Moreno*, 173 Wn. App. 479, 492-93, 294 P.3d 812 (2013). Facts that appear innocuous to an average person may appear suspicious to an officer in light of past experience. *Id.* at 493.

If an officer did not have a reasonable suspicion of criminal activity under the totality of circumstances, a detention is unlawful and evidence discovered during the detention must be suppressed. *Fuentes*, 183 Wn.2d at 158.

2.    Reasonable Suspicion Analysis

The question here is whether the trial court's findings of fact support its legal conclusion that Benenati's detention of Chester was based on reasonable suspicion and therefore was lawful. Chester challenges conclusion of law 3, which states:

> Based on the totality of the testimony presented at the CrR 3.6 hearing, which is herein incorporated by reference, there was probable cause to believe that Mr. Chester was in the process of illegally harvesting mushrooms when observed by Ranger Benenati.

CP at 47.[2] He also challenges conclusion of law 4, which states in part that the detention was lawful.

---

[2] Chester also assigns error to a portion of finding of fact 7, in which the trial court stated that Benenati's detention was based on the park aide's "observations of two men in the area illegally harvesting mushrooms." CP at 46. Substantial evidence does not support this finding – there is

Multiple unchallenged findings of fact support the trial court's conclusions. Chester was in a densely wooded area that ordinarily was closed to traffic, and mushroom harvesting was not allowed in the area. Benenati observed Chester "on his hands and knees intently going through the leaf debris in a manner consistent with a person who was harvesting mushrooms." CP at 46. And Benenati knew from the park aide's report that two men had run away in the same area after seeing the aide.

In addition, when Benenati arrived Chester stood up and began walking away. Flight from an officer may be considered along with other factors in determining whether the officer had a reasonable suspicion of criminal activity. *See State v. Gatewood*, 163 Wn.2d 534, 540, 182 P.3d 426 (2008); *State v. Howerton*, 187 Wn. App. 357, 375, 348 P.3d 781, *review denied*, 184 Wn.2d 1011 (2015).

We hold that the trial court's unchallenged findings of fact support the trial court's conclusions that Benenati had a reasonable suspicion that Chester was illegally harvesting mushrooms based on the totality of the circumstances and that the detention was lawful. Therefore, we hold that Benenati's initial detention of Chester was permissible.[3]

---

no evidence that the park aide saw the two men harvesting mushrooms. However, any error is harmless because this portion of the finding of fact is not necessary to affirm the trial court's conclusion of law regarding reasonable suspicion. *State v. Cherry*, 191 Wn. App. 456, 466, 362 P.3d 313 (2015) (findings irrelevant to conclusion are harmless).

[3] The trial court's conclusion was stated in terms of probable cause, not reasonable suspicion. An officer can detain a suspect based on reasonable suspicion, which is less evidence than is needed to establish probable cause. *State v. Acrey*, 148 Wn.2d 738, 746-47, 64 P.3d 594 (2003). Therefore, we need not determine whether Benenati had probable cause in order to affirm the trial court's denial of the suppression motion.

C.      SEARCH OF BAG OF MUSHROOMS

Chester argues that even if his detention was lawful, Benenati unlawfully searched the bag of hallucinogenic mushrooms lying on the ground because he had not abandoned the bag.[4] We disagree.

1.    Legal Principles

Under the Fourth Amendment and article I, section 7, an officer generally cannot perform a search without a warrant. *State v. Weller*, 185 Wn. App. 913, 922, 344 P.3d 695, *review denied*, 183 Wn.2d 1010 (2015). And a *Terry* stop does not authorize an officer to search for evidence of a crime. *State v. Day*, 161 Wn.2d 889, 895, 168 P.3d 1265 (2007). Therefore, the State had the burden of showing that the search falls within one of the exceptions to the warrant requirement. *Id.* at 893-94. One established exception is for voluntarily abandoned property. *State v. Evans*, 159 Wn.2d 402, 407, 150 P.3d 105 (2007).

Whether a defendant has abandoned property generally is based on a combination of action and intent. *Id.* at 408. " 'Intent may be inferred from words spoken, acts done, and other objective facts, and all the relevant circumstances at the time of the alleged abandonment should be considered.' " *Id.* (quoting *State v. Dugas*, 109 Wn. App. 592, 595, 36 P.3d 577 (2001)). The question is whether the defendant relinquished his reasonable expectation of privacy by leaving the property. *Id.* The defendant bears the burden of showing he had an actual, subjective expectation of privacy in the left item and that his expectation was objectively reasonable. *Id.* at 409.

---

[4] The trial court also found in the alternative that the search was lawful as a search incident to arrest. The State does not argue that this conclusion was correct. Therefore, we do not address this issue.

A critical factor in determining whether a defendant has abandoned property is the status of the area where the property is located. *Id.* "[A]bandonment generally will be found if the defendant has no privacy interest in the area where the searched item is located." *State v. Hamilton*, 179 Wn. App. 870, 886, 320 P.3d 142 (2014); *see also Evans*, 159 Wn.2d at 409-10.

2.    Abandonment Analysis

The question here is whether the trial court's findings of fact support its legal conclusion that Chester abandoned the bag of hallucinogenic mushrooms when he walked away from them. Chester challenges conclusion of law 4, which states in part that Benenati's search was permissible because Chester abandoned the bag of mushrooms. He also challenges conclusion of law 5, which states that Chester "failed to demonstrate that he had a reasonable expectation of privacy" in the bag of mushrooms. CP at 47.

Here, the trial court made unchallenged findings that Chester began walking away from Benenati and then Benenati noticed the bag in the area where Chester had been. These findings support the conclusion that Chester intended to leave the bag behind. Further, the trial court's findings establish that the bag was located in a state park, an area where Chester clearly had no privacy interest. That fact also supports the conclusion that Chester abandoned the bag. *Evans*, 159 Wn.2d at 409-10. And because Chester abandoned the bag of mushrooms, he necessarily lost any reasonable expectation of privacy in it. *Id.* at 408.

We hold that the trial court's unchallenged findings of fact support the trial court's conclusions that Chester had abandoned the bag of hallucinogenic mushrooms and that he had no expectation of privacy in the bag. Therefore, we hold that Benenati's search of the bag of mushrooms was permissible.

## CONCLUSION

Substantial evidence supports the trial court's findings of fact and those findings support its conclusions of law. Benenati had a reasonable suspicion of criminal activity when he observed Chester on his hands and knees intently going through leaf debris in a manner consistent with mushroom harvesting in an area closed to mushroom harvesting. Benenati could search the bag of hallucinogenic mushrooms because Chester had abandoned it. We affirm the trial court's order denying Chester's motion to suppress and therefore we affirm Chester's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

JOHANSON, J.

BJORGEN, C.J.